No. 99–1625. TANGIPAHOA PARISH BOARD OF EDUCATION ET AL. *v.* FREILER ET AL. C. A. 5th Cir. Certiorari denied. ▇

JUSTICE SCALIA, with whom THE CHIEF JUSTICE and JUSTICE THOMAS join, dissenting.

I

On April 19, 1994, the Tangipahoa Parish, Louisiana, Board of Education (Board) passed the following resolution:

> "Whenever, in classes of elementary or high school, the scientific theory of evolution is to be presented, whether from textbook, workbook, pamphlet, other written material, or oral presentation the following statement shall be quoted immediately before the unit of study begins as a disclaimer from endorsement of such theory.
>
> "It is hereby recognized by the Tangipahoa Parish Board of Education, that the lesson to be presented, regarding the origin of life and matter, is known as the Scientific Theory of Evolution and should be presented to inform students of the scientific concept and not intended to influence or dissuade the Biblical version of Creation or any other concept.
>
> "It is further recognized by the Board of Education that it is the basic right and privilege of each student to form his/her own opinion or maintain beliefs taught by parents on this very important matter of the origin of life and matter. Students are urged to exercise critical thinking and gather all information possible and closely examine each alternative toward forming an opinion." Pet. for Cert. 2.

Approximately seven months after this resolution was adopted, respondents, three parents of children attending the Tangipahoa Parish Public Schools, brought suit in the United States District Court for the Eastern District of Louisiana against petitioners, the Board, its members, and the superintendent of the school district. They brought a facial challenge to the disclaimer contained in the last two paragraphs of the resolution, claiming that it violated the coextensive Establishment Clauses of the United States and Louisiana Constitutions. The District Court ruled in favor of respondents. 975 F. Supp. 819 (1997). It concluded that the disclaimer lacked a secular purpose, and thus failed the first prong of the three-prong test outlined in *Lemon* v. *Kurtzman,*

403 U. S. 602 (1971), because the Board's articulated purpose—that it adopted the disclaimer to promote critical thinking by students on the subject of the origin of life—was a sham. See 975 F. Supp., at 829. It therefore held the disclaimer unconstitutional under both the Federal and the Louisiana Constitutions. See *id.*, at 830.

The Fifth Circuit affirmed. 185 F. 3d 337 (1999). It began by noting that, in the context of public education, this Court has used three different tests to evaluate state actions challenged on Establishment Clause grounds: the three-prong test of *Lemon;* the "endorsement" test of *County of Allegheny* v. *American Civil Liberties Union, Greater Pittsburgh Chapter,* 492 U. S. 573 (1989); and the "coercion" test of *Lee* v. *Weisman,* 505 U. S. 577 (1992). See 185 F. 3d, at 343. Although noting that the *Lemon* test has been "widely criticized and occasionally ignored," the court opted to apply it. 185 F. 3d, at 344. The court first concluded that the disclaimer had a secular purpose and therefore survived the first prong of the *Lemon* test. See 185 F. 3d, at 344–346. While agreeing with the District Court that the purpose of promoting critical thinking by students on the subject of the origin of life was a sham, the court concluded that the disclaimer served two other, legitimate secular purposes: disclaiming any orthodoxy of belief that could be inferred from the exclusive place of evolution in the curriculum, and reducing offense to any student or parent caused by the teaching of evolution. See *ibid.*

The Fifth Circuit then turned to the second prong of the *Lemon* test—the so-called "effects" prong. See 185 F. 3d, at 346–348. The court concluded that the disclaimer failed this prong because "the primary effect of the disclaimer is to protect and maintain a particular religious viewpoint, namely belief in the Biblical version of creation." *Id.*, at 346. It based this conclusion on three factors: "(1) the juxtaposition of the disavowal of endorsement of evolution with an urging that students contemplate alternative theories of the origin of life; (2) the reminder that students have the right to maintain beliefs taught by their parents regarding the origin of life; and (3) the 'Biblical version of Creation' as the only alternative theory explicitly referenced in the disclaimer." *Ibid.* (Finally, the court noted, albeit in passing and without elaboration, that, because the disclaimer failed the second prong of the *Lemon* test, it would also fail the endorsement test. See 185 F. 3d, at 348.)

Petitioners unsuccessfully moved for rehearing by the panel and by the en banc Fifth Circuit. 201 F. 3d 602 (2000). Judge Barksdale, joined by six other judges, dissented from the denial of rehearing en banc. See *id.*, at 603–608.

## II

Like a majority of the Members of this Court, I have previously expressed my disapproval of the *Lemon* test. See *Lamb's Chapel* v. *Center Moriches Union Free School Dist.*, 508 U. S. 384, 398–400 (1993) (SCALIA, J., joined by THOMAS, J., concurring in judgment); *County of Allegheny, supra,* at 655–657 (KENNEDY, J., concurring in judgment in part and dissenting in part); *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints* v. *Amos,* 483 U. S. 327, 346–349 (1987) (O'CONNOR, J., concurring in judgment); *Wallace* v. *Jaffree,* 472 U. S. 38, 107–113 (1985) (REHNQUIST, J., dissenting). I would grant certiorari in this case if only to take the opportunity to inter the *Lemon* test once for all.

Even assuming, however, that the Fifth Circuit correctly chose to apply the *Lemon* test, I believe the manner of its application so erroneous as independently to merit the granting of certiorari, if not summary reversal. Under the second prong of *Lemon,* the "principal or primary effect [of a state action] must be one that neither advances nor inhibits religion." *Lemon, supra,* at 612. Far from advancing religion, the "principal or primary effect" of the disclaimer at issue here is merely to advance freedom of thought. At the outset, it is worth noting that the theory of evolution is the only theory actually *taught* in the Tangipahoa Parish schools. As the introductory paragraph of the resolution suggests, the disclaimer operates merely as a (perhaps not too believable) "disclaimer from endorsement" of that single theory, and not as an affirmative endorsement of any particular religious theory as to the origin of life, or even of religious theories as to the origin of life generally. The only allusion to religion in the entire disclaimer is a reference to the "Biblical version of Creation," mentioned as an illustrative *example*—surely the most obvious example—of a "concept" that the teaching of evolution was "not intended to influence or dissuade." The disclaimer does not refer again to the "Biblical version of Creation," much less provide any elaboration as to what that theory entails; instead, it merely reaffirms that "it is the basic right and privilege of each

student to form his/her own opinion or maintain beliefs taught by parents on this very important matter of the origin of life and matter," and neutrally encourages students "closely [to] examine *each* alternative" before forming an opinion.

As even this cursory discussion of the disclaimer amply demonstrates, the Fifth Circuit's conclusion that "[t]he disclaimer . . . encourages students to read and meditate upon religion in general and the 'Biblical version of Creation' in particular," 185 F. 3d, at 346, lacks any support in the text of the invalidated document. In view of the fact that the disclaimer merely reminds students of their right to form their own beliefs on the subject, or to maintain beliefs taught by their parents—not to mention the fact that the theory of evolution is the only theory actually taught in the lesson that follows the disclaimer—there is "no realistic danger that the community would think that the [School Board] was endorsing religion or any particular creed, and any benefit to religion or to the Church would have been no more than incidental." *Lamb's Chapel, supra,* at 395. At bottom, the disclaimer constitutes nothing more than "simply a tolerable acknowledgment of beliefs widely held among the people of this country," *Marsh* v. *Chambers,* 463 U. S. 783, 792 (1983). See also *Lynch* v. *Donnelly,* 465 U. S. 668, 673 (1984) ("Nor does the Constitution require complete separation of church and state; it affirmatively mandates accommodation, not merely tolerance, of all religions, and forbids hostility toward any").

In denying the petition for rehearing, the Fifth Circuit panel took another tack: "In denying rehearing, we emphasize that we do not decide that a state-mandated statement violates the Constitution simply because it disclaims any intent to communicate to students that the theory of evolution is the only accepted explanation of the origin of life, informs students of their right to follow their religious principles, and encourages students to evaluate all explanations of life's origins, including those taught outside the classroom. We decide only that under the facts and circumstances of this case, the statement of the Tangipahoa Parish School Board is not sufficiently neutral to prevent it from violating the Establishment Clause." 201 F. 3d, at 603. Inasmuch as what the disclaimer contains is nothing more than what this statement purports to allow, the explanation is incoherent. Reference to unnamed "facts and circumstances of this case" is not a substi-

tute for judicial reasoning. The only aspect of the disclaimer that could conceivably be regarded as going beyond what the rehearing statement purports to approve is the explicit mention—as an example—of "the Biblical version of Creation." To think that this reference to (and plainly not endorsement of) a reality of religious literature—and this use of an example that is not a contrived one, but to the contrary the example most likely to come into play—somehow converts the otherwise innocuous disclaimer into an establishment of religion is quite simply absurd.

In *Epperson* v. *Arkansas*, 393 U. S. 97 (1968), we invalidated a statute that forbade the teaching of evolution in public schools; in *Edwards* v. *Aguillard*, 482 U. S. 578 (1987), we invalidated a statute that required the teaching of creationism whenever evolution was also taught; today we permit a Court of Appeals to push the much beloved secular legend of the Monkey Trial one step further. We stand by in silence while a deeply divided Fifth Circuit bars a school district from even suggesting to students that other theories besides evolution—including, but not limited to, the Biblical theory of creation—are worthy of their consideration. I dissent.